**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allied World Assurance Company,<br><br>  Plaintiff,<br><br>v.<br><br>Farm Bureau Property & Casualty Insurance Company, et al.,<br><br>  Defendants. | No. CV-24-01677-PHX-SMM<br><br>**ORDER** |

   This matter is before the Court on Plaintiff's and Defendants' cross-motions for summary judgment. (Docs. 52, 64). Plaintiff Allied World Assurance Company ("Allied World") seeks equitable contribution from Defendants Farm Bureau Property & Casualty Assurance Company ("Farm Bureau") and Western Agricultural Insurance Company ("Western") for three prior lawsuits, arising from E. Coli infections from the consumption of romaine lettuce, that Plaintiff defended and settled. (Doc. 1). For the following reasons, the Court denies Plaintiff's Motion (Doc. 64) and grants Defendants' Motion (Doc. 52).

   **I.    BACKGROUND**

   **A. The Insurance Policies**

   Plaintiff insured Andrew Smith Company ("ASC"), a California limited liability company, under an Umbrella Liability Insurance Policy, bearing Policy No. 0309-1606, with a policy period of August 21, 2017, through August 21, 2018. (Docs. 53 at 1; 65 at 12). ASC contracted to purchase romaine lettuce from nonparties Marlatt Brothers

Produce, LLC ("Marlatt") and Desert Premium Farms, LLC ("Desert Premium"). (Id. at 2; Id.). ASC's grower agreements with Marlatt and Desert Premium required Marlatt and Desert Premium to obtain liability insurance coverage listing ASC as an additional insured "with insurance companies licensed in the State of California and acceptable to ASC." (Id.) It further required that "[t]he insurance coverages listed above, shall be primary and not entitled to contribution from any insurance maintained by ASC, and shall list ASC as an additional insured…." (Id.)

Defendants Farm Bureau and Western are not licensed to write insurance policies in California. (Id.) However, Defendant Farm Bureau insured Marlatt under a Member's Choice Personal Package liability policy bearing number 7552973, with a policy period of March 1, 2018, through March 1, 2019. (Id.) The policy included a "communicable disease" exclusion that included, in relevant part, that "[t]here is no coverage for any 'damages' or 'medical expenses' 'arising out of' any transmission, or threat of transmission, of any communicable disease or sickness." (Id.)

Defendant Western insured Desert Premium under a commercial liability policy bearing number AMP 6006135 (primary) and an Umbrella Liability Policy bearing number AMU 001357 (umbrella). (Id.) The primary and umbrella policies shared an effective policy period of July 9, 2017, through July 1, 2018. These policies also included a communicable disease exception that states that "[t]his insurance does not apply to: . . .'[b]odily injury' or 'property damage' arising out of the actual or alleged transmission of a communicable disease." (Id.) The umbrella policy's exclusion states that insurance does not apply to "Bodily Injury" . . . "arising out of a communicable disease by an insured." (Id.)

### B. Liability Certificate

Marlatt and Desert Premium shared insurance agent Joseph Robbins ("Mr. Robbins"). (Doc. 53 at 3-4). In 2017, John Boelts ("Mr. Boelts"), an owner of Desert Premium, asked Mr. Robbins to purchase insurance for Desert Premium adding ASC as an additional insured on Desert Premium's liability policies. (Docs. 65 at 13; 74 at 3).

1    Mr. Robbins was an authorized representative for both Defendants and issued liability insurance certificates on behalf of Defendants Farm Bureau and Western to ASC. (Id.) However, Farm Bureau did not list ASC as an additional insured under Marlatt's Policy no. 7552973. (Id. at 3). The certificate issued to ASC states that "[t]his certificate certifies liability is afforded" and "is issued as a matter of information only and does not amend, alter or extend any of the coverages in the Farm Bureau Member's Choice Personal Package policy." (Id.)

Defendant Western also issued a certificate of liability insurance" to ASC via Mr. Robbins that states that ASC was "listed as additional insured" on Desert Premium's polices. (Id. at 3). However, the certificate states "[t]his certificate is issued as a matter of information only and confers no rights upon the policy holder" and "does not affirmatively or negatively amend extend or alter the coverage afforded by the polices below." (Id.) It further provided, "Important: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed." (Id.)

Additionally, Mr. Robbins never advised Desert Premium, Western, or ASC that it was not an additional insured, and Mr. Field, a senior underwriter at Defendant Farm Bureau, never informed Desert Premium or ASC that it was not an additional insured. (Docs. 65 at 15; 74 at 5).

### C. Lawsuits

Beginning in 2018, ASC faced three personal injury lawsuits following an outbreak of E. coli infections associated with the consumption of romaine lettuce, during the applicable policy period. (Id. at 18; Id. at 8). The lawsuits included the Cullinan, Ingberg and Ruocchio lawsuits. (Id.) The FDA, Center for Disease Control and Prevention ("CDC"), and state investigators determined that consumption of romaine lettuce grown on farms in Yuma County, Arizona and the Wellton, Arizona area "was the cause of the outbreak." (Doc. 65 at 17; Id.).

On July 9, 2021, ASC agreed to settle claims brought by nonparty Nancy Cullinan

based on allegations that Cullinan was injured after eating food contaminated with E. coli on March 20, 2018. (Docs. 53 at 4; 65 at 19). On February 20, 2022, ASC agreed to settle claims brought by nonparty Stephanie Ingberg based on allegations that Ingberg was injured after consuming food contaminated with E. coli on March 20, 2018. (Id.) Finally, on March 17, 2022, ASC agreed to settle claims brought by nonparties James and Ruocchio based on allegations that the Ruocchios were injured after consuming food contaminated with E. coli on March 22, 2018. (Id.) Allied World continues to incur defense costs in the Ruocchio natter; despite the settlement, as Freshway filed crossclaims in the United States District Court for the Eastern District of New York and the matter remains ongoing. (Id.)

Plaintiff tendered defense and indemnity of its E. coli lawsuits to Defendants on December 13, 2019, and on January 24, 2020, Defendants rejected those tenders maintaining that the liability insurance policies issued by Defendants do not "include ASC as an additional insured." (Id.)

Plaintiff admitted in its answers to Defendants' interrogatories that it settled the relevant cases over one year before Plaintiff commenced this case. (Docs. 53 at 4; 65 at 11). Plaintiff admits that it paid the Ingberg settlement in full on March 17, 2022, the Ruocchio settlement in full on April 4, 2022, and the Cullinan settlement in-full on July 15, 2021. (Id.)

Plaintiff commenced this action on July 9, 2024. (Doc. 1). Plaintiff brings claims for equitable contributions against Defendant Western (Count I) and Defendant Farm Bureau (Count II). (Id.) The Court allowed Defendants to amend their answer to assert a statute of limitations defense. (Doc. 63). Defendants filed a Motion for Summary Judgment (Doc. 52) and Plaintiff filed a Cross-Motion for Summary Judgment (Doc. 64). The parties filed replies to their cross-motions. (Docs. 73, 75).

## II.   LEGAL STANDARD

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion [ ] and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III. DISCUSSION

Plaintiff seeks reimbursement under an equitable contribution theory from Defendants for three lawsuits it settled and crossclaims it continues litigating on behalf of ASC, arising from E. coli infections from the consumption of romaine lettuce. (Doc. 64). Defendants argue that they do not have a duty to defend and indemnify ASC because they did not insure ASC and/or the same risks. (Doc. 52). Defendants allege that the insurance policies did not include ASC as an additional insured, the policies did not cover a communicable disease injury, and that Plaintiff's claims are untimely under the statute of limitations. (Id.) For the reasons set forth, the Court finds that Plaintiff's claims are untimely under the relevant statute of limitations. Therefore, the Court need not address the merits of Plaintiff's equitable contribution claims.

### A. Statute of Limitations

At issue here is whether Plaintiff's equitable contribution claims are time barred. (Docs. 52, 64, 73, 75). Defendant contends that the UCATA's one-year statute of limitations applies to Plaintiff's equitable contribution claims. (Doc. 52 at 8-9). In response, Plaintiff contends that the one-year statute of limitations does not apply in this case because (1) Plaintiff asserts an independent equitable right to contribution from co-insurers of the same risk that falls outside of the UCATA's scope and (2) courts in other jurisdictions have held that contribution claims between insurers are governed by general statute of limitations provisions, not the UCATA one-year statute of limitations. (Doc. 64

at 11); see A.R.S. § 12-253. At minimum, both parties agree that the three-year statute of limitations under A.R.S. § 12-543 applies. (Docs. 73 at 12-13; 75 at 9).

Under Arizona law, "a cause of action accrues, and the statute of limitations commences, when one party is able to sue another." Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am., 898 P.2d 964, 967 (Ariz. 1995). "The very purpose of enacting a statute of limitations is to fix a limit within which an action must be brought and to prevent the unexpected enforcement of stale claims against persons who have been thrown off their guard by want of prosecution." Hall v. Romero, 685 P.2d 757, 763 (Ariz. Ct. App. 1984).

When a defendant asserts the statute of limitations as a defense, the defendant has the burden of proving that the complaint falls within the statute. Troutman v. Valley Nat. Bank of Arizona, 826 P.2d 810, 814 (Ariz. Ct. App. 1992). "However, the burden of proving that the statute was tolled or that the defendant is estopped from relying on the statute falls on the plaintiff." Id. If doubt exists "as to which of two limitations periods apply, courts generally apply the longer." Gust, 898 P.2d at 968.

### 1.  A.R.S. § 12-2503(D)

Arizona has adopted a modified version of the Uniform Contribution Among Tortfeasors Act ("UCATA"), A.R.S. §§ 12-2501 to 2509. The UCATA abolished the prior common law rule prohibiting claims of contribution among joint tortfeasors and made each joint tortfeasor responsible for that tortfeasor's pro rata share of the entire liability, which was to be allocated according to "relative degrees of fault." See § 12-2502. A right of contribution against other joint tortfeasors was created in favor of any tortfeasor who has paid more than that tortfeasor's "pro rata share of the common liability." See § 12-2501(B). Additionally, the Arizona UCATA creates a separate and distinct cause of action for contribution which does not accrue until after one of several joint tortfeasors has paid more than its share of the common liability. § 12-2501(B); § 12-2503; see Nikolous v. Superior Court In & For Maricopa Cnty., 756 P.2d 925, 926 (Ariz. 1988); see also Kriz v. Buckeye Petroleum Co., 701 P.2d 1182, 1188 (Ariz. 1985).

Although contribution is an equitable remedy, the limitations period for such a claim is governed by statute. Nikolous, 756 P.2d at 926 ("contribution is statutory"); see Freeman v. Sorchych, 245 P.3d 927, 932 (Ariz. App. 2011) ("In Arizona, contribution is an equitable remedy that has been recognized by the Arizona courts and legislature in limited circumstances, most notably in the insurance and tort contexts.") (collecting cases). Specifically, A.R.S. § 12-2503(D) states the following:

> If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has either:
>
> 1. Discharged by payment the common liability within the statute of limitations period applicable to the claimant's right of action against him and has commenced his action for contribution within one year after payment.
>
> 2. Agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.

Here, Plaintiff contends that the Arizona UCATA does not apply to equitable contribution claims among insurers. (Doc. 64 at 11). Rather, Plaintiff contends that the UCATA only applies to tortfeasors seeking contribution from other tortfeasors and insurers subrogated to its insured's rights against tortfeasors, but it asserts an independent right of contribution from co-insurers of the same risk. (Id.)

In response, Defendants contend that the distinction between seeking contribution from another tortfeasor and seeking contribution from another insurer is essentially the same. (Doc. 73 at 10-11). Further, Defendants contend that, in both scenarios, Plaintiff must show that ASC was covered under Defendants' policies for the same risk or casualty. (Id. at 10); see Nucor Corp. v. Employers Ins. Co. of Wausau, 296 P.3d 74, 83-84 (Ariz. App. 2012). Therefore, Defendants contend that Plaintiff is subject to the same defenses that ASC would be subject to if it were asserting a coverage claim directly, including: (1) that ASC was not an insured, and (2) that ASC was subject to a coverage exclusion. (Doc. 73 at 10-11); see California Cas. Ins. Co. v. Am. Family Mut. Ins. Co., 94 P.3d 616, 622 (Ariz. App. 2004).

Plaintiff also contends that this Court should follow decisions from the District of Nevada interpreting the Nevada UCATA. (Doc. 64 at 13-14). However, as Defendants correctly point out, decisions in other judicial districts are not binding on this Court. (Doc. 73 at 12); Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) ("[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.")

This Court previously determined that the Arizona UCATA applies to insurance companies seeking equitable contribution for liability in a tort action. (Doc. 63). Once the statute of limitations is determined, the plaintiff has "the burden of proving that the statute was tolled or that the defendant is estopped from relying on the statute." Troutman, 826 P.2d at 814. However, Plaintiff does not argue that the statute should be tolled or that Defendants are estopped from relying on the statute.

Plaintiff admitted in its answers to Defendants' interrogatories that it settled the relevant cases over one-year before Plaintiff commenced this case. (Docs. 53 at 4; 65 at 11). Specifically, Plaintiff admits that it paid the Ingberg settlement in full on March 17, 2022, the Ruocchio settlement in full on April 4, 2022, and the Cullinan settlement in-full on July 15, 2021. (Id.) However Plaintiff commenced this suit on July 9, 2024, which is nearly three-years after the first settlement was paid in-full. (Doc. 1). Thus, Plaintiff was approximately two years late in bringing this action. Accordingly, the Court finds that Plaintiff's claims are time barred under A.R.S. § 12-2503(D).

### 2. A.R.S. § 12-543

However, to the extent doubt exists "as to which of two limitations periods apply, courts generally apply the longer." Gust, 898 P.2d at 968; Continental Cas. Co. v. Gabe Brick Co., 401 P.2d 168, 170 (Ariz. 1965) ("where two constructions are possible, the one which gives the longer period of limitations is the one which is to be preferred.").

Plaintiff contends that the three-year statute of limitations should apply and that its claims are timely. (Doc. 64 at 14). Plaintiff further contends in its reply that the applicable limitations period did not begin running until it paid final payment or

settlement, and asks the Court to follow non-binding precedent in the District of Nevada and the Northern District of Illinois. (Doc. 75 at 9). In contrast, Defendants contend that even if the three-year statute of limitations applies, Plaintiff's claims are still time-barred because the cause of action began accruing when Defendants first denied coverage. (Doc. 73 at 12-13).

In Arizona, "a cause of action accrues whenever one person may sue another." Healey v. Coury, 783 P.2d 795, 799 (Ariz. App. 1989). In the context of equitable contribution, Arizona law does not require an insurer to provide a complete defense before it can file suit. Nucor, 296 P.3d at 84; see also Am. Cont'l Ins. Co., Inc., 903 P.2d at 611 ("In determining whether a claim for equitable contribution may lie, we see no reason why the question should be limited to whether a claim was made or a lawsuit filed against the insured.").

Rather, accrual occurs when the claim for a defense and indemnity is denied. See Healey v. Coury, 783 P.2d 795, 799–800 (Ariz. App. 1989) (applying § 12-543 and holding that "cause of action arose and the statute of limitations began to run. . .when [Plaintiff] demanded payment and [Defendant] refused to pay"); Don Kelland Materials, Inc. v. Langel, 560 P.2d 1281, 1282 (Ariz. App. 1977) (applying § 12-543 and holding that claim "accrued when appellant's claim under the policy was denied").

Here, Defendants first denied coverage in March 2019. (Doc. 65 at 99–102.) Defendants also denied coverage in letters to Plaintiff's counsel sent in January 2020 (Doc. 65 at 104–09), and again in May 2020 (Doc. 65 at 111–15). All these letters were sent more than three years before Plaintiff commenced this lawsuit on July 9, 2024. (Doc. 1). Thus, even if § 12-543's three-year limitation applies, Plaintiff's claims are still barred. Moreover, Plaintiff has the burden of proving that the statute of limitations was tolled, but Plaintiff does not argue that the statute of limitations should be tolled. See Troutman, 826 P.2d at 814.

Thus, even if this Court applies the three-year statute of limitations under A.R.S § 12-543, Plaintiff's claims are still time-barred because they accrued more than three years

before Plaintiff commenced suit. Accordingly, the Court finds that Plaintiff's claims are barred under A.R.S. § 12-543.

## IV. CONCLUSION

Upon reviewing the parties' briefing on their cross-motions for summary judgment, the Court concludes that Plaintiff's claims are time-barred under both statute of limitations, A.R.S. § 12-2503(D) and A.R.S. § 12-543. Therefore, the Court need not reach the merits of Plaintiff's equitable contribution claims.

Accordingly, for the reasons set forth,

**IT IS ORDERED granting** Defendants' Motion for Summary Judgment. (Doc. 52).

**IT IS FURTHER ORDERED denying** Plaintiff's Cross-Motion for Summary Judgment. (Doc. 64).

**IT IS FURTHER ORDERED dismissing** Plaintiff's Complaint **with prejudice**. (Doc. 1).

**IT IS FURTHER ORDERED directing** the Clerk of Court to enter judgment accordingly and terminate this action.

Dated this 11th day of February, 2026.

_____
Stephen M. McNamee
Senior United States District Judge